**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| **JEFFREY CABE, SEAN FREY, ANITA POTEETE, RONDA ROHDE, ROBERT SNELL, JEFFREY MOORE and ELISA TINNELL, MICHAEL KAP, KAREN ROBERTSON, JIM WESTRA, JOHNNY RUIZ, ARCHIE ROBINSON, DECODA KEYS and NORMA MOODY, Each Individually and on Behalf of All Others Similarly Situated,** | Case No. 1:24-CV-01316 <br><br> Hon. John Robert Blakey <br><br> Hon. Jeffrey T. Gilbert |
| Plaintiffs, |  |
| v. |  |
| **EVERGREEN PACKAGING LLC and PACTIV EVERGREEN INC.,** |  |
| Defendants. |  |

**<ins>DEFENDANTS' OPPOSITION TO PLAINTIFFS'</ins>
<ins>MOTION FOR CONDITIONAL CERTIFICATION</ins>**


Dated: July 1, 2024


/s/ *John A. Ybarra*
By Their Attorneys

John A. Ybarra, Bar No. 6196983
jybarra@littler.com
Matthew J. Ruza, Bar No. 6321424
mruza@littler.com
Yara Mroueh, Bar No. 6324386
ymroueh@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street
Suite 1100
Chicago, IL 60654
Telephone: 312.372.5520

**<u>TABLE OF CONTENTS</u>**

Page

I.     SUMMARY OF OPPOSITION ................................................................. 1

II.    FACTUAL BACKGROUND................................................................. 4

    A.    Overview of the Pactiv Evergreen, Inc. Affiliated Companies ........................... 4

    B.    The Myriad Timekeeping Practices And Policies At The Pactiv Evergreen Companies................................................................. 5

    C.    Most of The Named Plaintiffs Are Not Employed By Defendants And None Are Employed by Pactiv Evergreen ............................................... 7

    D.    Discovery Conducted To Date Confirms There Is No Factual Nexus Binding the Plaintiffs or the Collective ............................................... 8

III.   ARGUMENTS & AUTHORITIES ................................................................. 10

    A.    Because The Parties Are In The Middle of Discovery, Plaintiffs' Motion for Conditional Certification Should Be Held To A Heightened Evidentiary Standard................................................................. 10

    B.    Even If This Court Employs The "Lenient" Standard, Plaintiff's Motion Must Be Denied ................................................................. 11

    C.    Plaintiff and Putative Collective Members Were Not Subject to a Common Policy or Plan That Violated the FLSA. ............................................... 12

        1.    The FLSA Permits Neutral Windows for Employees to Punch-In and Out Each Day ................................................................. 12

        2.    The Pactiv Companies Timekeeping Policies and Practices Are Not Uniform Across the Country................................................................. 15

        3.    Plaintiffs' Threadbare Proffer is Insufficient to Meet Their Burden Even Under A Lenient Standard ................................................................. 16

        4.    Plaintiffs Cannot Satisfy Their Burden To Establish A National Class Including Non-Defendant Employers And Employees.................. 20

IV.   THE PROPOSED NOTICE METHOD AND FORMS ARE HARASSING, OBJECTIONABLE, AND PREMATURE ................................................................. 21

    A.    The Scope of Plaintiffs' Proposed Notice Must Be Revised ............................. 21

i

B.  The Content of Plaintiffs' Proposed Communications Must Be Revised............ 22

C.  Any Notice Should Be Disseminated By A Third-Party Administrator, By Regular Mail Only, and Without A Reminder Notice ......................................... 22

D.  A Sixty-Day Notice Period is Appropriate ......................................................... 23

V.  CONCLUSION.............................................................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adair v. Wisconsin Bell, Inc.*,
  No. 08-C-280, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008)................................................19

*Amandah v. Alro Steel Corp.*,
  2020 WL 4926653 (E.D. Wis. Aug. 21, 2020) ..................................................................14, 16

*Barrett v. NorthShore Univ. Healthsys.*,
  No. 1:17-CV-09088, 2019 WL 4412726 (N.D. Ill. Sept. 16, 2019) ........................................16

*Bergman v. Kindred Healthcare, Inc.*,
  949 F.Supp.2d 852 (N.D. Ill. 2013) ....................................................................................2, 10

*Bigger v. Facebook, Inc.*
  375 F. Supp. 3d 1007 (N.D. Ill. 2019) (Leinenweber, J.) .......................................................24

*Black, et al. v. P.F. Chang's China Bistro, Inc.*,
  2017 WL 2080408 (N.D. Ill. 2017) ........................................................................................20

*Blakes v. Ill. Bell Tel. Co.*,
  2011 U.S. Dist. LEXIS 43147 (N.D. Ill. Apr. 21, 2011) ........................................................11

*Blakes v. Ill. Bell Telephone Co.*,
  2011 WL 2446598 (N.D. Ill. June 15, 2011) ..........................................................................23

*Bousquet v. Eagle Disposal, Inc.*,
  2024 WL 323508 (E.D. Wis. Jan. 29, 2024)............................................................................18

*Boyd v. Alutiiq Global Solutions, LLC*
  2011 WL 3511085, at *1 ....................................................................................................18, 19

*Brant v. Schneider Natl. Inc.*,
  No. 20-C-1049, 2023 WL 4042016 (E.D. Wis. May 4, 2023) ................................................14

*Brunner v. Jimmy John's LLC*,
  2015 WL 5086388, at *3 (N.D. Ill. Aug. 19, 2015)................................................................20

*Cain v. TruckMovers Depot, Inc.*,
  2022 WL 4364789 (N.D. Ill. Sept. 21, 2022) ........................................................................16

*Calloway v. AT&T Corp.*,
  419 F. Supp 3d. 1031 (N.D. Ill. 2019) ...................................................................................21

*Espenscheid v. Directsat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) ............................................................11

*Hannah v. Huntington National Bank*,
    2020 WL 2571898 (N.D. Ill. May 21, 2020) (Seeger, J.) ......................20

*Hawkins v. Alorica, Inc.*,
    287 F.R.D. 431 (S.D. Ind. 2012) ......................................................11

*Hudgins v. Total Quality Logistics, Inc., LLC*,
    No. 16 C 7331, 2016 WL 7426135 (N.D. Ill. Dec. 23, 2016) ...............23

*Jirak v. Abbott Laboratories, Inc.*,
    566 F. Supp. 2d 845 (N.D. Ill. 2008) ...............................................22

*Korenblum v. Citigroup, Inc.*,
    195 F. Supp. 3d 475 (S.D.N.Y. July 19, 2016) ...................................13

*Lynch v. Dining Concepts Grp.*,
    No. 2:15-cv-580-PMD, 2015 WL 5916212 (D.S.C. Oct. 8, 2015)...........23

*Muir v. Guardian Heating and Cooling Serv's, Inc.*,
    2017 WL 959028 (N.D. Ill. Mar. 13, 2017) (Leinenweber, J.)..............24

*Nehmelman v. Penn Nat'l Gaming, Inc.*,
    822 F.Supp.2d 745 (N.D. Ill. 2011) .................................................22

*Nogueda v. Granite Masters, Inc.*,
    2010 U.S. Dist. LEXIS 37657 (N.D. Ind. Apr. 14, 2010) .....................11

*Piazza v. New Albertsons, LP*,
    2021 WL 365771 (N.D. Ill. Feb. 3, 2021) .........................................24

*Reab v. Electronic Arts, Inc.*,
    214 F.R.D. 623 (D. Colo. 2002) ......................................................23

*Reyes v. Nidaja, LLC*,
    2015 WL 4622587 (S.D.N.Y. Aug. 3, 2015) ......................................18

*Rivers v. Southway Carriers, Inc.*
    Case No. 23 C 738, 2024 WL 579734 (N.D. Ill. Feb. 13, 2024) ...........12

*Robinson v. Empire Equity Grp.*,
    No. WDQ-09-1603, 2009 WL 4018560 (D. Md. Nov. 18, 2009) ...........23

*Robles v. Brunswick Corp.*,
    2020 WL 109776 (E.D. Wis. Jan. 9, 2020)........................................14

*Rowe v. Hamilton,*
No. 6:16-03259-CV-RK, 2017 U.S. Dist. LEXIS 21726 ......................................................23

*Salinas v. O'Reilly Auto., Inc.,*
2005 WL 3783598 (N.D.Tex.2005)...................................................................................20

*Scott v. Now Courier, Inc.,*
No. 1:10-cv-971, 2012 U.S. Dist. LEXIS 43710 (S.D. Ind. Mar. 29, 2012) ..........................14

*Sharma v. Burberry Ltd.,*
52 F. Supp. 3d 443 (E.D.N.Y. Sept. 4, 2014) .......................................................................13

*Smallwood v. Illinois Bell Telephone Co.,*
710 F. Supp. 746 (N.D. Ill. 2010) ......................................................................................21

*Stickle v. SCI W. Mkt. Support Ctr., L.P.,*
2009 WL 3241790 (D. Ariz. Sept. 30, 2009)......................................................................23

*Swales v. KLLM Transport Services LLC,*
No. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021) ......................................................11

*Thompson v. Speedway SuperAmerica LLC,*
2008 U.S. Dist. LEXIS 115050 (D. Minn., Aug. 21, 2008) ..................................................19

*Tom v. Generac Power Systems, Inc.,*
2018 WL 3696607 (E.D. Wis. Aug. 3, 2018) ...............................................................12, 14

*Vazquez v. Ferrara Candy Co.,*
No. 14 C 4233, 2016 WL 4417071 (N.D. Ill. Aug. 19, 2016)................................................11

*Wallace, et al. v. Evergreen Packaging LLC,*
22-CV-337, Dkt. 63 (E.D. Ark. March 31, 2023).............................................................1, 20

*Wilkins v. Just Energy Group, Inc.,*
171 F. Supp. 3d 798 (N.D. Ill. 2016) .................................................................................20

*Williams, et al. v. TopHAT Logistics, Inc., et al.,*
Case No. 23-cv-1573, 2023 WL 8190366 (N.D. Ill. Nov. 27, 2023) ............................ *passim*

*Wilson v. Pactiv, LLC*
2021 WL 5818492, at *6 (C.D. Cal. Dec. 3, 2021) ......................................................1, 2, 13

*Woodall v. Evergreen Packaging LLC,*
23-CV-459, Dkt. 46 (N.D. Ill. Jan. 19, 2024) (Leinenweber, J.)................................... *passim*

**Statutes**

Fair Labor Standards Act ........................................................................................... *passim*

**Other Authorities**

29 C.F.R. § 785.48(a)............................................................................................................12

Fed. R. Civ. P. 33(d) ..............................................................................................8, 9, 10, 11

## I.    SUMMARY OF OPPOSITION

After two failed attempts to conditionally certify a nationwide collective, Plaintiffs seek a third bite of the same apple by now requesting that this Court conditionally certify a collective of *thousands* of current and former hourly production workers at the 66 facilities operated by the two Defendants. As with their two previous attempts,[1] Plaintiffs only support their third request with cookie-cutter declarations of eight Plaintiffs from seven facilities to claim that Pactiv Evergreen Inc.[2], Evergreen Packaging LLC (hereinafter referred to as "Defendants") and every other plant across the country owned and operated by affiliated but different companies, have a single uniform policy and practice of unlawfully "rounding" employees to require them to work off-the-clock.

As described more thoroughly below, Plaintiffs' contention is patently, demonstrably <u>false</u>: There is no centralized "rounding" policy applicable to all putative class members that violates the law. In fact, Judge Stanley Blumenthal of the United States District Court for the Central District of California, in the case entitled *Wilson v. Pactiv, LLC*, specifically held that Defendants' rounding policy, on its face, did not violate relevant wage and hour laws because the "mere presence of a rounding policy says nothing about Defendant's liability." 2021 WL 5818492, at *6 (C.D. Cal. Dec. 3, 2021). Moreover, the Parties have already conducted discovery in this matter and a review of the Plaintiffs' time and payroll records demonstrates that the alleged rounding practices applicable to them varied *significantly*, and more importantly, in some cases, actually *benefitted the employee*. *See Wilson*, 2021 WL 5818492, at *7. For example, **one of the Named Plaintiffs, Anita Poteete, was actually overpaid by 2.41 minutes per shift due**

---

[1] *See Wallace, et al. v. Evergreen Packaging LLC*, 22-CV-337, Dkt. 63 (E.D. Ark. March 31, 2023) (conditionally certifying a limited collective of Defendant's Pine Bluff, AR and Malvern, AR facilities); *Woodall v. Evergreen Packaging LLC*, 23-CV-459, Dkt. 46, at *8 (N.D. Ill. Jan. 19, 2024) (Leinenweber, J.) (denying nationwide certification and only conditionally certifying a collective limited to Defendants' Malvern, AR and Athens, GA facilities).

[2] As detailed below, Pactiv Evergreen Inc. does not employ *any* hourly production workers.

**to Defendants' grace period policy, totaling nearly 21 hours of overpayment during the relevant limitations period.** *See* Declaration of Kelly Rodgers, at ¶ 5, attached hereto as **Exhibit B**. Thus, each of the Plaintiffs did not routinely work off-the-clock under a grace period.

Because the parties have already begun discovery in this case, Plaintiffs' haphazard allegations should be held to a heightened evidentiary standard before notice may issue. *See Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852 (N.D. Ill. 2013). However, even if the Plaintiffs' Motion is not analyzed under a heightened standard, their Motion must be denied because they cannot make even the "modest factual showing" required to conditionally certify such a broad and diverse collective. In denying Plaintiffs' second attempt to certify a nationwide collective in *Woodall*, the late Judge Leinenweber instructed Plaintiffs that they "must demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated" by "demonstrating an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws." *See Woodall, et al. v. Evergreen Packaging LLC*, Case No. 23-CV-459, at *3 (N.D. Ill. Jan. 19, 2024); *Williams, et al. v. TopHAT Logistics, Inc., et al.*, Case No. 23-cv-1573, 2023 WL 8190366, at *6 (N.D. Ill. Nov. 27, 2023). Plaintiffs have, yet again, failed to do so in this case. As demonstrated by their few threadbare, cookie cutter declarations and discovery responses (discussed in more detail below), Plaintiffs have no factual nexus binding such a large collective together.

*First,* Plaintiffs fail to set forth facts demonstrating that Pactiv maintained a common, unlawful timekeeping policy that violated the FLSA. As detailed below, *some* Pactiv facilities utilize lawful grace periods for *some* employees for their convenience in punching in and/or out of work. This practice is unquestionably permissible under the FLSA, and the *Wilson* court already approved such a policy *See Wilson*, 2021 WL 5818492, at *7. Plaintiffs present no

evidence to the contrary. Moreover, the evidence offered shows that the only policy that is consistent among all facilities is the one expressly prohibiting employees from performing work within any grace period provided and prohibiting all employees from working off-the-clock.

*Second*, even if Plaintiffs were able to show that there was an unlawful policy at any single Pactiv facility (which they cannot), they fail to show that it is "common" across the putative collective. Here, where Plaintiffs seek conditional certification of a collective across thousands of non-exempt employees at dozens of facilities across three separate companies, two of which are not even Defendants in this case,[3] they must show *some* evidence of a common policy or plan that it is uniformly applied to the putative collective across all locations. Not only do Plaintiffs fail to provide such evidence across the putative collective, **but they also fail to provide any evidence at all for five of the facilities where the Plaintiffs were employed**. Instead, Plaintiffs offer only cookie-cutter declarations and conclusory discovery responses that lack any substantive evidence that they and their co-workers routinely worked off-the-clock because of rounding. Thus, it is only clear that there is a dizzying array of different timekeeping practices that are not uniformly applied in the putative collective across companies, business units, *or even within the same work location.*

*Third*, Plaintiffs offer only a few boilerplate, generally identical declarations from ***a few of*** the Pactiv affiliated facilities. These declarants offer no evidence that they have ever even stepped foot inside any of the dozens of other facilities for which Plaintiffs now seek certification, much less that they have first-hand (or any) knowledge of the timekeeping practices at those plants. The declarations and discovery responses also fail to provide any firsthand detailed knowledge of the timekeeping practices; they consist of mostly broad conclusory

---

[3] As demonstrated below in Defendants' chart, Plaintiffs are employed by three separate employers: Pactiv LLC, Evergreen Packaging LLC, and Fabri-Kal Inc.

statements and hearsay. They do not provide the Court with even a "modest factual showing" that the putative collective was subjected to a common policy that violated the law or that there is a factual nexus that binds them together as victims of a particular violation across 66 different facilities for three different companies, two of which are not even defendants here. *See TopHAT Logistics, Inc.*, 2023 WL 8190366, at *6. Plaintiffs' Motion must be denied.

## II.     FACTUAL BACKGROUND

### A.     Overview of the Pactiv Evergreen, Inc. Affiliated Companies

The roots of all the Pactiv Evergreen Inc. affiliated companies stretch back to 1880 and, not long after, in 1908, Evergreen Packaging opened up its first mill operations in Canton, North Carolina. *See* Declaration of Tina Devay, at ¶ 3, attached hereto as **Exhibit A**. As a result of a series of mergers, by 2021, Evergreen Packaging LLC, Pactiv LLC, and Fabri-Kal Corp. became affiliated, and together, the affiliated companies became the leading manufacturers of fresh food and beverage packaging in North America. *Id.* The entities together now encompass sixty-six facilities throughout North America. *Id.* In total, the affiliated companies employ nearly 14,000 workers, who are employed by either Evergreen Packaging, Pactiv LLC, or Fabri-Kal across 66 different plants throughout the country. *Id.*

Each facility within this structure operates independently, with its own policies and practices that are based on historical practice, negotiated union requirements in some locations, and the facility's individual business needs. *Id.*, ¶ 4. This lack of uniformity applies to the timekeeping practices at each facility across the country, and consequently, there is ***no centralized timekeeping policy*** that uniformly controls each Pactiv Evergreen facility. *Id.*, ¶ 5; Ex. B, at ¶¶ 3-4; *see* Declaration of Megan Taylor, at ¶¶ 3-4, attached hereto as **Exhibit C**; *see* Declaration of Ian Anthony, at ¶¶ 3-4, attached hereto as **Exhibit D**; *see* Declaration of Hury Gochez-Kerr, at ¶¶ 4-6, attached hereto as **Exhibit E**; *see* Declaration of Derrick Dyas, at ¶¶ 3-5,

attached hereto as **Exhibit F**; *see* Declaration of Linda Levingston-Madrigal, at ¶¶ 3, 5-6, attached hereto as **Exhibit G**; *see* Declaration of Jennifer Pesch, at ¶¶ 3-4, attached hereto as **Exhibit H**. To the contrary, each facility has developed their own compliant, lawful, timekeeping practices that allow employees to timely punch-in and out and ensures that they are paid for all time worked. *Id.* Some facilities allow employees to punch-in and out each day during a facility-specific grace period prior to and after the end of their scheduled shift times. *See* Ex. F, at ¶ 4; *see* Ex. B, at ¶ 4; *see* Ex. D, at ¶ 5; *see* Ex. H, at ¶ 4; *see* Ex. C, at ¶ 4. Some plants utilize grace periods for some employees but not others. *See* Ex. E, at ¶ 6. Some plants do not utilize grace periods at all. *See* Ex. A, at ¶ 7 (no grace period at the end of the shift). The only consistent policy across companies, plants and employees, is that all employees are directed to never work prior to the start of their scheduled shift times or off the clock.

> **B.** **The Myriad Timekeeping Practices And Policies At The Pactiv Evergreen Companies**

A sampling of the different timekeeping policies and practices at various facilities, including those where the Plaintiffs worked, is instructive:

| Pactiv Location (And Owner-Employer) | Timekeeping Practices at Facility |
|---|---|
| **Hazleton, PA (Fabri-Kal)** | This union facility operates four 12-hour shifts. *See* Declaration of Hury Gochez-Kerr, attached hereto as **Exhibit E**, at ¶ 4.<br><br>**Certain production employees who work 12-hour shifts utilize a 30-minute grace period at the start of their scheduled shifts and a 7-minute grace period at the end of their scheduled shifts.** Employees punching in or out outside of those grace period windows are paid to the punch.<br><br>**Any employee clocking out before the scheduled end of their shift are paid to the punch.** *Id.,* **at ¶ 5.** |
| **Turlock, CA (Evergreen)** | This Evergreen union facility does not have a grace period for employees to punch-in each day. *See* Declaration of Linda Levingston-Madrigal, attached hereto as **Exhibit G**, at ¶ 5.<br><br>**Instead, production workers clock in and begin work 10 minutes before the start of their shift.** *Id.* **During these 10 minutes,** |

| Pactiv Location (And Owner-Employer) | Timekeeping Practices at Facility |
|---|---|
| | employees engage in a pre-shift meeting with their shift supervisor. *Id*. **They are, of course, <u>paid</u> for all of this time.** *Id*. |
| **Canton, NC (Evergreen)**[4] | This union facility, which operated two 12-hour shifts, utilized a **30-minute grace period at both the start and end of the shift**. *See* Declaration of Derrick Dyas, attached hereto as **Exhibit F**, at ¶ 4. This facility incorporated a "shift-relief buddy system", where employees were designated to a "buddy" who relieves them at the end of their shift. *Id*. at, ¶ 7. Once the relief (or the buddy) arrived, the employee assigned to the earlier shift stopped working and clocked out, and the buddy clocked in and began taking over the operations of the job. *Id*. |
| **Frankfort, IL (Pactiv)** | This non-union facility utilizes a **7-minute grace period for the start *and* end of the shift**. *See* Ex. B, at ¶ 4.<br><br>Any employee who clocks in for their shift before the 7-minute mark is paid to the punch. Similarly, any employee who clocks out at the end of their shift after the 7-minute mark is paid to the punch. *Id*. at ¶¶ 3-4. |
| **St. Charles, IL (Pactiv)** | This non-union facility utilizes a **7-minute grace period for the start and end of the shift**. *See* Declaration of Jennifer Pesch, attached hereto as **Exhibit H**, at ¶ 4.<br><br>Unique to the St. Charles facility is that employees are scheduled for 7.5-hour shifts, with a 30-minute meal break. Employees can opt to "make up" their 30-minute meal break by clocking in 30-minutes early or clocking out 30 minutes late. *Id*. at ¶ 3. Most employees opt to do so. *Id*. **Employees who opt to "make up" their 30-minute meal break and clock in early (i.e., most employees) are *not* subject to the 7-minute grace period and are entirely paid to the punch. *Id*.**<br><br>St. Charles also utilizes a "shift-relief buddy system" and employee schedules overlap to ensure that employees are able to leave their post the second their relief arrives and is clocked in ready to work. *Id*. Thus, employees are paid for <u>all</u> time worked. *Id*. |
| **Canandaigua, NY (Pactiv)** | This Pactiv non-union facility utilizes a 7-minute grace period *only* at the start of employee shifts. *See* Ex. A, at ¶¶ 5, 7.<br><br>Employees do not have a grace period at the *end* of their shifts. *Id*., at ¶ 5. **Employees at Canandaigua also have 30-minute overlaps between shifts to ensure continued operation and ensure that employees are paid for all time spent working.** *Id*. |
| **Mineral Wells, WV (Pactiv)** | This non-union facility utilizes a **7-minute grace period at the start and end of employee shifts**. *See* Declaration of Megan Taylor, attached hereto as **Exhibit C**, at ¶ 4.<br><br>**This timekeeping practice allows employees to punch-in no more than 7-minutes prior to their scheduled shift-start time.** *Id*. |

---

[4] The Canton facility shut down in June of 2023. A select few hourly employees, including Plaintiff Cabe, assisted in the wind down of operations and clean up through October of 2023. To date, only a select handful of employees remain to run a small division of the facility that remains operational, which is less than a dozen employees.

| Pactiv Location (And Owner-Employer) | Timekeeping Practices at Facility |
|---|---|
| | **Employees are not required to work, and do not perform any work, between the time they punch in, and the time of their scheduled shift start.** *Id*.<br><br>The Mineral Wells facility operates two 12-hour shifts. *Id*. Due to the location of the timeclocks, no employee is able to begin work until after clocking in for their shift. *Id.,* at ¶ 5. |
| **Kinston, NC (Pactiv)** | This non-union facility utilizes a 7-minute grace period for both the start and end of an employee's scheduled shift. *See* Declaration of Ian Anthony, **attached hereto as Exhibit D**, at ¶¶ 4-5.<br><br>The Kinston facility operates 24-hours a day, 5-days a week. *Id*., at ¶ 3. **Employees who work a different shift than the one they are scheduled to work (which happens frequently), do not utilize grace periods and are paid to the punch for the time the employee clocked in and out.** *Id*., at ¶ 4.<br><br>The timeclock is located outside of the production floor; thus, production workers cannot physically perform any work before clocking in for their shift. *Id*. |

Thus, as demonstrated by the above chart, the only policy that is consistent among the facilities is a clear and unequivocal prohibition on employees working off-the-clock in *any* capacity.

### C. Most of The Named Plaintiffs Are Not Employed By Defendants And None Are Employed by Pactiv Evergreen

As mentioned above, Pactiv Evergreen Inc. is merely a holding company and is not an employer as defined under the FLSA. It does not employ anyone. In relevant part, it owns three other different companies: Pactiv LLC, Evergreen Packaging LLC, and Fabri-Kal Corp., which each separately own and operate plants and employ the workers at the respective plants. Hence, no Plaintiff is employed by Defendant Pactiv Evergreen Inc. Further, only two of the Plaintiffs – Jeffery Cabe and James Westra – were employed by Evergreen Packaging LLC at its Canton, North Carolina and Kalamazoo, MI facilities respectively. The remainder of the Named Plaintiffs are employed by other entities that are not Defendants in this case. *See* Ex. F, at ¶¶ 9-22. Thus, as

currently pled, it is only Plaintiffs Cabe and Westra[5] that can bring claims against either of the Defendants.

### D. Discovery Conducted To Date Confirms There Is No Factual Nexus Binding the Plaintiffs or the Collective

The parties have exchanged meaningful discovery, including Defendants' production of Plaintiffs' time and pay records, as well as targeted interrogatories and requests for production served on Plaintiffs. Plaintiffs' interrogatory responses confirm that *none* can demonstrate, *with evidence*, an identifiable nexus that binds the Plaintiffs together as victims of a particular violation of the law:

- When asked to identify the work tasks Plaintiffs were required "to perform without receiving any or all required compensation, the amount of time that it took [them] to perform each such task, when [they] performed such tasks, and the frequency with which [they] performed such task (i.e., daily, weekly, monthly, quarterly or otherwise as you specify), and the average total number of minutes to perform such task," Plaintiffs only responded with objections and vague and conclusory statements, such as:

  o "These tasks *could* include any of the tasks I regularly performed throughout the day." *See* Declaration of Matthew Ruza, attached hereto as **Exhibit I**; *see also* Michael Kap's Answer to Interrogatory No. 5, attached as **Exhibit 1** to Ex. I; *see also* Elisa Tinnell's Answer to Interrogatory No. 5, attached as **Exhibit 2** to Ex. I; *see also* Sean Frey's Answer to Interrogatory No. 5, attached as **Exhibit 3** to Ex. I; *see also* Johnny Ruiz's Answer to Interrogatory No. 5, attached as **Exhibit 4** to Ex. I; *see also* Jim Westra's Answer to Interrogatory No. 5, attached as **Exhibit 5** to Ex. I; *see also* Robert Snell's Answer to Interrogatory No. 5, attached as **Exhibit 6** to Ex. I.

  o "Defendants' may access this information as easily, or more easily, than Plaintiff by reviewing Defendants' own records. *See* Fed. R. Civ. P. 33(d)." *See* Ronda Rohde's Answer to Interrogatory No. 5, attached as **Exhibit 7** to Ex. I

  o "These are the same tasks that I was required to perform during my

---

[5] Defendants have informed Plaintiffs' counsel that Plaintiff Westra's claims are untimely as he ceased employment with Defendant Evergreen Packaging in July 2016, nearly five years outside the applicable statute of limitations. *See* Ex. F, at ¶ 18. Despite this, counsel has failed to dismiss Plaintiff Westra and, if the court is inclined to grant Plaintiffs' Motion, it should not include the Kalamazoo, MI facility where Plaintiff Westra worked.

scheduled shift." *See* Norma Moody's Answer to Interrogatory No. 5, attached as **Exhibit 8** to Ex. I.[6]

- When asked to describe the work Plaintiffs "performed while clocked in before the scheduled start of [their] shift" Plaintiffs, again, only responded with objections and vague and conclusory statements, such as:

  o "Defendants may access this information as easily or more easily, than Plaintiff by reviewing Defendants' own records. *See* Fed. R. Civ. P. 33(d)." *See* Ruza Decl., at Ex. 1, 2, 4, 5, and 7.

  o "This work *could* be pre-shift meetings as well as the work I would perform at my station during my shift." *See* Jeffrey Cabe's[7] Answer to Interrogatory No. 6, attached as **Exhibit 9** to Ex. I; *see also* Decoda Keys' Answer to Interrogatory No. 6, attached as **Exhibit 10** to Ex. I.

- When asked to describe the basis for Plaintiffs' claim that they *knew* that "Defendants' consistently paid other production workers for fewer hours than they had worked," Plaintiffs, again, only responded with objections and vague and conclusory statements, such as:

  o "Objection. This Interrogatory is overly broad, vague and unduly burdensome in asking Plaintiff to describe in detail all facts relating to Plaintiff's allegations in the Complaint that Defendants violated the FLSA." *See* Ruza Decl., at Ex. 1, 2, 4, 5, and 7.

- When asked only to identify other production workers that they claim were paid for fewer hours than they worked or *observed* working more hours than those other employees were paid, many of the Plaintiffs could not provide anything but a conclusory statement: such as:

  o "The conversations occurred at the Frankfort, Illinois facility." *See* Anita Poteete's Answer to Interrogatory No. 8, attached as **Exhibit 11** to Ex. I.
  o "Objection. This Interrogatory is unduly burdensome in that it seeks information that is not reasonable to retain in normal personal records or memory." *See Id.* at Ex. 5, Answer to Interrogatory No. 8.
  o "This occurred at the Bedford Park, Illinois facility." *See Id.* at Ex. 4, Answer to Interrogatory No. 8.
  o "This occurred at the St. Charles, Illinois plant." *See Id.* at Ex. 7, Answer

---

[6] Importantly, by Plaintiffs own admission in their Complaint, each were production workers that worked on a production line, handling machinery and material – thus, Plaintiffs' statements that they did the "same tasks" they were required to perform throughout the day is simply impossible given that they could not be out on the production floor without passing a timeclock first.

[7] Notably, Plaintiff Jeffery Cabe signed a general release agreement with Pactiv Evergreen in June 2023 as a result of the Canton, North Carolina facility shut down. Thus, Plaintiff Cabe's claims in the instant action are fully released and, therefore, he cannot be representative of any other putative collective members.

to Interrogatory No. 8.

- o "This occurred at the Jackson, South Carolina plant." *See Id.* at Ex. 2, Answer to Interrogatory No. 8.
- o "This occurred at the Hazelton, Pennsylvania facility." *See Id.* at Ex. 1, Answer to Interrogatory No. 8.

- When asked to describe the alleged "common policy of rounding" employees' time, Plaintiffs could not do so:

  - o "Defendants may access this information as easily, or more easily, than Plaintiff by reviewing Defendants' own records. *See* Fed. R. Civ. P. 33(d)." *See* Ruza Decl., at Exs. 1, 2, 4, 5, and 7, Answers to Interrogatory 11.

  - o "Our timesheets did not reflect the correct time that we clocked in. My pay stubs and clock-in and clock-out records would reflect this information." *See* Ruza Decl., at Exs. 3, 6, Answers to Interrogatory No. 11.

  - o "My pay stubs and clock-in and clock-out records would reflect this information." *See* Ruza Decl., at Exs. 8, 11, Answer to Interrogatory 11.

Plaintiffs' discovery responses demonstrate that they are unable to provide *any* evidence beyond their own conclusory assertions that Defendants' grace period policy was unlawful – Plaintiffs conclusory and hearsay statements in their declarations and discovery responses do not provide the necessary evidence to meet even the 'lenient' conditional certification standard.

## III. ARGUMENTS & AUTHORITIES

### A. Because The Parties Are In The Middle of Discovery, Plaintiffs' Motion for Conditional Certification Should Be Held To A Heightened Evidentiary Standard.

Where, as here, discovery has occurred, courts employ a heightened evidentiary standard to analyze a motion to conditionally certify a collective action. *See Bergman v. Kindred Healthcare, Inc.*, 949 F.Supp.2d 852 (N.D. Ill. 2013). In *Bergman*, the parties had exchanged interrogatories, requests for production, and depositions. *Id.* at 856. The court determined this was enough to require the plaintiff to make *more than a modest factual showing* that he was similarly situated to the other putative collective members. *Id.* As in *Bergman*, the parties here

have exchanged documents and interrogatories, including the exchange of time and payroll records, so that each party can conduct their own data analysis to determine whether *all of the Named Plaintiffs* were subject to an unlawful rounding policy that violated the FLSA. Because Plaintiffs have this benefit, application of the heightened evidentiary standard is appropriate. [8] *See Vazquez v. Ferrara Candy Co.,* No. 14 C 4233, 2016 WL 4417071 (N.D. Ill. Aug. 19, 2016) (applying the heightened evidentiary standard where plaintiff had the "full benefit of discovery"); *Hawkins v. Alorica, Inc*., 287 F.R.D. 431 (S.D. Ind. 2012) (applying the heightened scrutiny standard where the parties had exchanged significant information and documents).

### B.     Even If This Court Employs The "Lenient" Standard, Plaintiff's Motion Must Be Denied

Even if the Court employs the "modest factual showing" standard, Plaintiffs have failed to make the necessary factual proffer to meet certification. "Though lenient, the 'modest factual showing' standard is not a mere formality." *Nogueda v. Granite Masters, Inc.*, 2010 U.S. Dist. LEXIS 37657, at *5 (N.D. Ind. Apr. 14, 2010). Nor is it "a matter of rubber-stamping." *Blakes v. Ill. Bell Tel. Co.*, 2011 U.S. Dist. LEXIS 43147, at *6 (N.D. Ill. Apr. 21, 2011). Rather, the Named Plaintiffs must demonstrate a factual nexus. Demonstrating this "factual nexus" requires more than complaint allegations, and typically requires factual support like "affidavits,

---

[8] In the absence of clear directive from the Seventh Circuit, the Court should follow the Fifth and Sixth Circuits' decisions in *Swales* and *Clark*, respectively, and "rigorously scrutinize" whether a group of employees are similarly situated before granting conditional certification. Indeed, the two-step process, allowing for conditional certification on nothing more than pleadings and minimal evidence presented by plaintiffs, has never been adopted by the Seventh Circuit and has now been squarely rejected by the Fifth Circuit. *See Espenscheid v. Directsat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("Indeed, despite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, . . . there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminology differences.") (internal citation omitted); *Swales v. KLLM Transport Services LLC*, No. 19-60847, 2021 WL 98229 (5th Cir. Jan. 12, 2021) (noting that the *Lusardi* two-step process has no "anchor in the FLSA's text or in the Supreme Court's precedent interpreting it" and noting the "Supreme Court's admonition that while a district court may 'facilitate notice to potential plaintiffs' for case management purposes, it cannot signal approval of the merits or otherwise stir up litigation.").

declarations, deposition testimony, or other documents." *Rivers v. Southway Carriers, Inc*. Case No. 23 C 738, 2024 WL 579734, at *10 (N.D. Ill. Feb. 13, 2024). But here, Plaintiffs really rely only on their complaint and those few conclusory and notably *identical* statements. Such scant evidence does not meet even a "lenient" standard.

**C.  Plaintiff and Putative Collective Members Were Not Subject to a Common Policy or Plan That Violated the FLSA.**

Under either standard for determining whether a collective action is proper, the fundamental inquiry is on adequate proof that the collective is "similarly situated." Plaintiffs must show that "they and potential plaintiffs together were victims of a common policy or plan that violated the law". To do so, a plaintiff *must* demonstrate with evidence "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation" of the law. *Williams,* 2023 WL 8190366, at *6. In short, Plaintiffs must present <u>actual evidence</u> that (1) a specific policy or practice existed; and (2) such policy or practice was both common and unlawful. Plaintiffs have utterly failed to make either showing here.

**1.  *The FLSA Permits Neutral Windows for Employees to Punch-In and Out Each Day***

Plaintiffs' argument that the Pactiv companies various pre-shift and post-shift timekeeping conventions constitute an "unlawful rounding policy" is simply incorrect. Grace periods, in place solely for the employee's convenience, are specifically contemplated and allowed for under the FLSA. Specifically, the regulations provide:

> In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded.

29 C.F.R. § 785.48(a); Courts in the Seventh Circuit have adopted the same standard. *See e.g.*, *Tom v. Generac Power Systems, Inc*., 2018 WL 3696607, *5 (E.D. Wis. Aug. 3, 2018).

In fact, the lawfulness of Defendants' rounding policies have been specifically reviewed and addressed by a U.S. District Court. In *Wilson v. Pactiv LLC et al,* U.S. District Court Judge Stanley Blumenfeld examined Pactiv's grace period policies under the California standard, which is more stringent than the federal FLSA standard, and he noted that employers are permitted to adopt policies just like Pactiv's current grace period policy. *Supra,* 2021 WL 5818492, at *6 (C.D. Cal. Dec. 3, 2021). With regard to Defendants' policies, he found that "the mere presence of a rounding policy **says nothing about Defendant's liability**." *Id.* (emphasis added). And the Court denied certification on Plaintiffs' rounding claim, holding that where Defendants' policy is facially lawful, "the question of whether employees were working is not subject to common proof but instead will require individualized inquiries into whether employees were working during the few minutes between when they clocked in and when their shift started." *Id.* The *Wilson* court's analysis is in accord with those of other District Courts. *See Korenblum v. Citigroup, Inc.,* 195 F. Supp. 3d 475, 480 (S.D.N.Y. July 19, 2016) ("[A]lthough a court does not adjudicate the merits of a claim at the first stage, the elements of, and defenses to, the claim inform the analysis of whether employees are similarly situated."); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 460 (E.D.N.Y. Sept. 4, 2014) (denying conditional certification and noting that "Plaintiffs' [off-the-clock] argument boils down to the proposition that because a regional manager instructed [her] not to use overtime, her statements must have reflected a national Burberry policy"; the court was "not prepared to take such a leap" based on that evidence). To that end, Plaintiffs, in this case, do not (because they cannot) **identify any single common unlawful policy that is violative of the FLSA.**

So instead, Plaintiffs argue that "other courts have conditionally certified rounding off-the-clock cases, so this court should too." (Dkt. 20). To be clear, they fail to describe how and

why *in this case,* production workers who worked at Defendants' facilities worked off-the-clock and unlawfully had their time rounded. Plaintiffs effectively make the circular argument that because Plaintiffs were allegedly subject to a policy where they "regularly worked over forty hours in a week, the hours which went uncompensated due to Defendants' rounding practices" and "created overtime violations." (Dkt. 16, at *8). Courts within this Circuit have rejected this argument. *See Brant v. Schneider Natl. Inc.,* No. 20-C-1049, 2023 WL 4042016, at *4 (E.D. Wis. May 4, 2023); *Scott v. Now Courier, Inc.,* No. 1:10-cv-971, 2012 U.S. Dist. LEXIS 43710, at *27-28 (S.D. Ind. Mar. 29, 2012).

The law specifically *allows* for Defendants to utilize grace periods so long as the practice, over time, does not consistently benefit the employer[9]. And, importantly, the employer for 12 of the 14 Plaintiffs is not even named in this case. As the court in *Generac Power Systems* instructs, the mere fact that Plaintiffs claim that they each individually worked without compensation between their clock times and their scheduled shift times is insufficient to make even a modest factual showing that defendant maintains a policy that fails to compensate more than 1,200 workers for several minutes of work each shift. *See* 2018 WL 3699607, at *5. And importantly, Plaintiffs are *in possession of the data* that demonstrates that Defendants' pre-shift and post-shift punch-in/out windows, during which employees are prohibited from working, actually *benefits* some employees (let alone neutral to the employee) such as Plaintiff Poteete, who was **overpaid** by 2.41 minutes per shift during her tenure with Defendants. *See* Ex. B, at ¶ 5. Plaintiffs' attempt

---

[9] And even if the rounding policy *does* benefit the employer, courts in this Circuit have held that particularly in rounding cases, because the ultimate question of whether employees are working off-the-clock is an individualized determination, conditional certification must be denied. *See Amandah v. Alro Steel Corp.*, 2020 WL 4926653, at **1-2 (E.D. Wis. Aug. 21, 2020) (denying conditional certification because even if plaintiffs arrived at work prior to the start of their scheduled shift times, defendant did not discipline employees who failed to arrive early and never sanctioned work prior to the start of their shifts); *Robles v. Brunswick Corp.*, 2020 WL 109776, at *7 (E.D. Wis. Jan. 9, 2020) (denying conditional certification where data revealed that rounding favored employer but because evidence showed that plaintiffs voluntarily came to work early and started working, the liability could not be attributed to defendant).

to fashion Defendants' lawful practice into an unlawful "rounding policy" that rounds off compensable work time flies in the face of all of the evidence and therefore does not support conditional certification.

### 2. *The Pactiv Companies Timekeeping Policies and Practices Are Not Uniform Across the Country*

Defendants utilize varied timekeeping practices at dozens of their facilities across the country – different time windows for employees to punch-in, different time windows for employees to punch-out, and at several sites, no grace periods at all, all of which necessarily results in a complicated web of varying policies across Pactiv facilities. *See supra*, Section II, B. And this is only more complicated by the fact that <u>*all but two*</u> of the Plaintiffs were employed by entities other than the two Defendants in this case. As courts in this district make clear – "the litmus test is whether Plaintiffs can demonstrate that the decision maker was acting similarly with respect to the putative class" – here, the decision maker is unquestionably *not* common to members of the putative collective because the decisions vary from facility to facility – and in many locations, even *within* a particular facility. *See TopHAT*, 2023 WL 8190366, at *8. In fact, for 12 of the 14 Plaintiffs, the decision maker was not even one that was employed by the Defendants. Plaintiffs cannot demonstrate that a single decision maker created an unlawful timekeeping policy that is *common* amongst the collective.

In examining a sample of all the Pactiv company facilities, there are stark differences:

- At Hazleton, a union-facility where Plaintiff Kapolka worked, **work group leaders working 12-hour shifts are not subject to *any* grace period and are paid according to their timeclock punches. Certain other production workers are subject to a 30-minute grace period at the front end of shifts and a seven-minute grace period at the end of their shifts. Employees who work outside of those grace periods are always paid to the punch.** *See* Ex. E, at ¶¶ 4-7.

- At St. Charles, a non-union facility where **Plaintiff Rohde worked, certain employees are scheduled for 7.5-hour shifts, with a 30-minute meal break.**

-15-

**Employees can opt to "make up" their 30-minute meal break by clocking in 30-minutes early or clocking out 30 minutes late.** Most employees do so **and those who do are *not* subject to the 7-minute grace period and are entirely paid to the punch**. *See* Ex. H, at ¶¶ 3-4.

- At Canandaigua, a non-union facility where Plaintiff Snell worked, employees who work an unscheduled shift or a punch-in outside of the 7-minute grace period at the start of the shift, are paid entirely to the punch. *See* Ex. A, at ¶¶ 5-7, 9.

- At Kinston, a non-union facility where Plaintiffs Moore and Keys worked, **employees who work a different shift than the one they are scheduled to work, which occurs *frequently*, are not subject to *any* grace period policy.** *See* Ex. D, at ¶¶ 3-5.

- Finally, at Turlock, there is no ***grace period at all.*** *See* Ex. G, at ¶¶ 5-6.

Where timekeeping practices vary so much, FLSA conditional certification must be denied. *See Amandah,* 2020 WL 4926653, at *4; *Cain v. TruckMovers Depot, Inc.*, 2022 WL 4364789, at *2 (N.D. Ill. Sept. 21, 2022) (denying conditional certification where plaintiff could not allege facts about 'other impacted employees'); *Barrett v. NorthShore Univ. Healthsys.*, No. 1:17-CV-09088, 2019 WL 4412726, at *3 (N.D. Ill. Sept. 16, 2019).

### 3. Plaintiffs' Threadbare Proffer is Insufficient to Meet Their Burden Even Under A Lenient Standard

Even when analyzed under the "lenient" standard, Plaintiffs' boilerplate declarations and discovery responses are woefully insufficient to demonstrate that Plaintiffs and the thousands of putative collective members are similarly situated.[10] Their few declarations distill to the following assertions: (i) plaintiffs punched in 10-minutes prior to the start of their shift and immediately began working; (ii) Defendants adjusted their hours to show that they only worked during their scheduled shift times; and (iii) they believe other production workers worked similar

---

[10] To the extent Plaintiffs are left to complain of a *de facto* 'off-the-clock' policy or practice across all 66 of the Pactiv companies' facilities based on evidence from just seven of those plants through eight boilerplate declarations, the claims for nationwide conditional certification must suffer the same fate. The declarations Plaintiffs submitted as evidence do not provide a basis to support the allegation that off-the-clock work exists anywhere outside of the seven locations where those Plaintiffs worked.

schedules and they discussed this issue with other employees. (Dkt. 19-6 – 19-13). When asked to provide information in discovery to support these threadbare allegations, Plaintiffs were unable to do so. *See supra*, Section II, D. Instead, Plaintiffs responded with three nearly identical answers:

First, Plaintiffs confirmed that they have no knowledge about any other employees who were allegedly working off-the-clock prior to the start of their shifts. For example, Plaintiff Ronda Rohde could say only that "[t]his occurred at the St. Charles, Illinois plant." *See* Ex. I, at Ex. 7, Answer to Interrogatory No. 8. Plaintiffs Tinnell, Ruiz and Kapolka said nearly the exact same thing, while Plaintiff Westra simply objected and failed to provide any response at all. *Id.*, at Exs. 2, 4, 1, 5, Answers to Interrogatory No. 8.

Second, Plaintiffs could not point to any work-related activity performed prior to the start of their shift with their time going uncompensated. For example, Plaintiff Kapolka said "[t]hese tasks *could* include any of the tasks I regularly performed throughout the day." *See* Ex. I, at Ex. 1, Answer to Interrogatory No. 5. Plaintiffs Tinnell, Frey, Ruiz, Westra and Snell provided identical responses. *See* Ex. I, at Exs. 2, 3, 4, 5, 6, Answers to Interrogatory No. 5. Plaintiff Rohde unexplainably directed Defendants to review their own records for this information, while Plaintiff Moody broadly responded with "[t]hese are the same tasks that I was required to perform during my scheduled shift." *See* Ex. I, at Exs. 7, 8, Answers to Interrogatory No. 5.

Critically, when asked to describe in their own words the alleged unlawful rounding policy, Plaintiffs failed to articulate anything at all, let alone describe a common policy that violates the FLSA. Plaintiffs Kapolka, Rohde, Tinnell, Ruiz, and Westra simply directed Defendants to their own records (which demonstrate that Defendants' grace period policy is lawful), while Plaintiff's Frey, Snell, Moody and Poteete could only point generally to their

-17-

timesheets and paystubs. *See* Ex. I, at Exs. 1, 7, 2, 4, 5, 3, 6, 8, 11, Answers to Interrogatory No. 11.

Third, Plaintiffs confirmed they lack any knowledge regarding the timekeeping practices applicable to production workers outside of their own facilities. In fact, their discovery responses confirmed that they could not even identify similarly situated production workers within their own facilities. Plaintiff Kapolka responded with a boilerplate objection. *See* Ex. I, at Ex. 1, Answer to Interrogatories No. 8, 9. Plaintiffs Tinnell, Rohde, Ruiz and Westra provide identical responses. *See* Ex. I, at Ex. 2, 4, 5, 7, Answer to Interrogatories No. 8, 9. Plaintiff Robinson could only vaguely "recall having conversations about this with my coworkers and with managers." *See* Archie Robinson's Answer to Interrogatory No. 7, attached as **Exhibit 12** to Ex. I. Plaintiffs Poteete, Ruiz, Rohde, Tinnell and Kapolka simply stated that the timekeeping practices alleged in their Complaint "occurred at" their specific facility.[11] *See* Ex. I, at Exs. 11, 4, 7, 2, 1.

There is a consensus across the country that "where a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes v. Nidaja, LLC*, 2015 WL 4622587, at *2 (S.D.N.Y. Aug. 3, 2015) (collecting cases); *Bousquet v. Eagle Disposal, Inc.*, 2024 WL 323508, at *4 (E.D. Wis. Jan. 29, 2024) (assertions that plaintiff "observed" off-the-clock work are "insufficient to sustain his burden" on conditional certification).

Judge Darrah's opinion in *Boyd v. Alutiiq Global Solutions, LLC* is particularly instructive. There, three of defendant's former employees moved for conditional certification

---

[11] While some of the Plaintiffs identify named individuals, such responses confirm that Plaintiffs are wholly unaware of the timekeeping practices at any of Defendants' other 50+ facilities and are unable to articulate a factual nexus that binds this expansive collective. That is because no such factual nexus exists.

under the FLSA. *Boyd*, 2011 WL 3511085, at *1. Plaintiffs did so offering only their own declarations as well as a declaration from one other employee. *Id.* at *2. In addition to describing their own experiences, the declarants claimed that defendant's pay practices were consistent among all of its employees, based on unidentified conversations with unidentified co-workers. *Id*. The court denied the plaintiffs' motion in its entirety, concluding that the allegations in the complaint, "read in connection with the declarations submitted by all parties, do not provide sufficient evidence that the conduct of which Plaintiffs complain is pervasive enough to affect [all of defendant's hourly employees]." *Id.* at *7. Similarly, the Court in *Adair* held that conclusory statements in the Plaintiffs declarations that they "observed other employees working outside their schedule…" was "insufficient to support a claim that these workers were subject to an illegal practice." *Adair v. Wisconsin Bell, Inc.,* No. 08-C-280, 2008 WL 4224360, at *9 (E.D. Wis. Sept. 11, 2008). This is exactly what we have here – Plaintiffs set forth nothing by conclusory statements in declarations and discovery that do not demonstrate that Defendants employees were subject to an illegal practice.

Importantly, Plaintiffs' declarations represent only .0005% of the nearly 14,000 current Pactiv workforce (and an even less percentage when you include all former hourly production workers across the country). Such a miniscule sample size – without any accompanying evidence of a company-wide practice or policy – cannot establish that Defendants have a common policy applicable to all members of the putative collective. As the court held in *Flores*, "a demonstration of [the employer's] payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a common policy or plan by [the employer] that violated the FLSA." *Flores,* 289 F. Supp. 2d at 1045; *see also Thompson v. Speedway SuperAmerica LLC*, 2008 U.S. Dist. LEXIS 115050, at *16 (D. Minn., Aug. 21, 2008)

("Such a constricted sampling of putative class members fails to support the Plaintiff's assertion of widespread FLSA violations which, purportedly, result from a common policy or plan."); *see also Salinas v. O'Reilly Auto., Inc.,* 2005 WL 3783598, at *6 (N.D.Tex.2005).

Likewise, here, Plaintiffs limited, conclusory declarations and statements made in discovery cannot evidence a company-wide policy that violated the FLSA, especially given the broad geographic and temporal scope of the proposed collective.[12] And certainly, were the Court inclined to grant Plaintiffs' Motion at all, it should be limited to the facilities for which the declarants actually worked. *See Woodall*, 23-CV-459, Dkt. 46; *Wallace*, 22-CV-337, Dkt. 63.

### 4. Plaintiffs Cannot Satisfy Their Burden To Establish A National Class Including Non-Defendant Employers And Employees

Finally, it is now clear that Plaintiffs are seeking certification of a class that goes well beyond the Defendants. In fact, 12 of the 14 Plaintiffs never worked for either Defendant. *See* Ex. F, at ¶¶ 9-22. And the two remaining Plaintiffs only worked for Defendant Evergreen Packaging. *Id.* Plaintiffs have offered no evidence to satisfy their burden for establishing that a collective that includes employers other than Defendants or plaintiffs other than the Defendants' employees is proper here. *See Brunner v. Jimmy John's LLC,* 2015 WL 5086388, at *3 (N.D. Ill. Aug. 19, 2015) (when named plaintiffs did not work for all of the named defendants, courts have held that their allegation that defendants violated the FLSA and state law by following a "common policy, plan or practice" is not enough to establish that the juridical link doctrine is available); *Wilkins v. Just Energy Group, Inc.*, 171 F. Supp. 3d 798, 807 (N.D. Ill. 2016)

---

[12] *See, e.g., Hannah v. Huntington National Bank*, 2020 WL 2571898, at *7 (N.D. Ill. May 21, 2020) (Seeger, J.) (rejecting conditional certification of national class where plaintiff "failed to present evidence that anyone outside *his own office* had a similar experience." (emphasis in original); *Black, et al. v. P.F. Chang's China Bistro, Inc.*, 2017 WL 2080408, at *10 (N.D. Ill. 2017) (holding that declarations from two employees who each worked exclusively at one P.F. Chang's restaurant location did not warrant expanding conditional certification to any other restaurants); *Flores*, 289 F. Supp. 2d at 1046 ("[A] demonstration of Lifeway's payment practice concerning two out of fifty employees ... does not rise to the level of a common policy or plan by Lifeway that violated the FLSA. This is not even a 'modest factual showing' of a common policy or plan, as that term has been used in other cases.").

-20-

(denying conditional certification as to non-named defendants and holding that "the juridical link doctrine does not allow Wilkins to proceed as a named plaintiff representing class members who worked for [non-named defendant]"). Therefore, even if the Court were to conclude that any conditional certification is proper, it must be limited to the scope of this case and the Evergreen Packaging employer/Defendant.

## IV. THE PROPOSED NOTICE METHOD AND FORMS ARE HARASSING, OBJECTIONABLE, AND PREMATURE

Plaintiffs' failure to adequately support their argument for conditional certification is grounds for denial of Plaintiffs' Motion. Even if the Motion is granted, however, Defendants object to Plaintiffs' overbroad proposed Notice and Consent to Join Collective Action. Furthermore, Defendants object to Plaintiffs' proposed methods of disseminating notice to the putative collective members and Plaintiffs proposed 90-day notice period.

### A. The Scope of Plaintiffs' Proposed Notice Must Be Revised

Should the Court decide to authorize notice, Plaintiffs' suggested Notice should be amended in several ways. First, for the reasons set forth above, the scope of any putative class should be limited, at most, to facilities at which the Plaintiffs who submitted declarations were employed. Plaintiffs' Notice should further be limited to encompass the appropriate limitations period – three years prior to the date the Court rules on Plaintiffs' Motion. The statute of limitations period runs from when collective action member files notice of consent to join the lawsuit, not from the date the lawsuit is filed. *See Smallwood v. Illinois Bell Telephone Co.*, 710 F. Supp. 746, 753 (N.D. Ill. 2010) (approving sixty-day notice period because the "FLSA statute of limitations continues to run on each individual's claim prior to the filing of their written consent to join."); *Calloway v. AT&T Corp.*, 419 F. Supp 3d. 1031, 1035 (N.D. Ill. 2019).

-21-

**B.** **The Content of Plaintiffs' Proposed Communications Must Be Revised**

The content of Plaintiffs' proposed communications to the putative class must be revised due to several deficiencies in the communications, including but not limited to:

- The communications should include disclaimers stating that the Court has authorized the Notice but takes no position concerning the merits of the case (*see* Dkt. 19-1).
- The communications should include information that opt-in plaintiffs will be subject to written discovery, preservation of documents, and depositions.
- The communications must be revised to delete implications that any individual who joins the action will "receive money" (*see* Dkt. 19-1).
- The communications must be revised to delete the implication that this lawsuit will settle (*see* Dkt. 19-1).
- The communications must be revised to accurately reflect the scope of the collective that has been conditionally certified.

A meet and confer with counsel regarding the issues identified above is appropriate in this context. *See Woodall*, 23-CV-459, at *8; *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 851 (N.D. Ill. 2008).

**C.** **Any Notice Should Be Disseminated By A Third-Party Administrator, By Regular Mail Only, and Without A Reminder Notice**

The Court should plainly reject Plaintiffs' request for notice by electronic mail. Plaintiffs have not provided any factual basis for presuming that putative collective members would not receive notice submitted by regular mail. If the Court is inclined to authorize email notice, it should be noted that most hourly production employees do not have company email and the Company should not be expected to take affirmative steps to obtain personal email addresses from those employees for whom it does not already have that information.

Plaintiffs' counsel's declaration details the firm's history of encountering problems when distributing notice in conditionally certified actions. *See* Sanford Decl., ¶¶ 5-13. Given counsel's own admissions regarding these difficulties, the Court should appoint a third-party administrator to distribute any notice in this action. *See Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d

-22-

745 (N.D. Ill. 2011). Use of a third-party administrator preserves the privacy of putative collective members and requires that the Company produce personal information concerning employees and former employees to only the third-party administrator on a confidential basis. *Blakes v. Ill. Bell Telephone Co.*, 2011 WL 2446598, at *7 (N.D. Ill. June 15, 2011) (collecting cases where courts in this district held that e-mail addresses and phone numbers create privacy concerns and should not be shared)[13]. Furthermore, Plaintiffs offer no evidence that their counsel has the appropriate data security protocols and protections in place to safeguard the private and confidential information of the putative collective members, many of whom will never join this case. *Lynch v. Dining Concepts Grp.*, No. 2:15-cv-580-PMD, 2015 WL 5916212, at *7 (D.S.C. Oct. 8, 2015) ("[P]rivacy of potential class members weighs in favor of requiring a third-party administrator.") (citation omitted)); *Robinson v. Empire Equity Grp.*, No. WDQ-09-1603, 2009 WL 4018560, at *5 (D. Md. Nov. 18, 2009) ("The plan should include safeguards for the privacy of potential class members, such as a requirement that notices be mailed by a neutral third-party administrator.").

Further, the Court should also reject Plaintiffs' request for a reminder notice, as it would be "redundant" and "could be interpreted as an endorsement of the lawsuit." *See Woodall*, *Woodall*, 23-CV-459, Dkt. 46, at *8 (denying reminder notice); *TopHAT*, 2023 WL 8190366, at *8 (denying reminder notice); *see also Hudgins v. Total Quality Logistics, Inc., LLC*, No. 16 C 7331, 2016 WL 7426135 at *6 (N.D. Ill. Dec. 23, 2016) (denying reminder notice).

### D. A Sixty-Day Notice Period is Appropriate

In addition, the Court should find that a 60-day notice period is appropriate, rather than

---

[13] *See also Rowe v. Hamilton,* No. 6:16-03259-CV-RK, 2017 U.S. Dist. LEXIS 21726, at *6-8 (W.D. Mo. Feb. 16, 2017) (denying plaintiffs' requests for notice by email and for an order requiring defendant to produce email addresses for putative class members); *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (denying plaintiff's request to order notice by email or by posting); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) (denying request for notice by email).

the 90-day notice period requested by Plaintiffs. *Muir v. Guardian Heating and Cooling Serv's, Inc.*, 2017 WL 959028, at *11 (N.D. Ill. Mar. 13, 2017) (Leinenweber, J.) (approving a 60-day notice period as opposed to the 90-day notice period requested by Plaintiffs); *Bigger v. Facebook, Inc.* 375 F. Supp. 3d 1007, 1025 (N.D. Ill. 2019) (Leinenweber, J.) (approving a sixty-day notice period in a nationwide collective); *Piazza v. New Albertsons, LP*, 2021 WL 365771, at *9 (N.D. Ill. Feb. 3, 2021) (approving sixty-day notice period for nationwide collective).

## V.    CONCLUSION

Based upon the foregoing facts, arguments, and authorities, Defendants Evergreen Packaging LLC and Pactiv Evergreen, Inc. respectfully request that this Court deny Plaintiffs' Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notices, and grant Defendants such other relief as may be just.

Dated:  July 1, 2024

Respectfully submitted,

EVERGREEN PACKAGING LLC and
PACTIV EVERGREEN INC.

*/s/ John A. Ybarra*
One of Their Attorneys

John A. Ybarra, Bar No. 06196983
jybarra@littler.com
Matthew J. Ruza, Bar No. 6321424
mruza@littler.com
Yara Mroueh, Bar No. 6324386
ymroueh@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL  60654
Telephone:    312.372.5520
Facsimile:    312.372.7880

**CERTIFICATE OF SERVICE**

I, John A. Ybarra, an attorney, hereby certify that, on July 1, 2024, I caused a copy of

***Defendants' Opposition to Plaintiffs' Motion for Conditional Certification*** to be filed with the

Clerk of the Court, using the CM/ECF system, and served upon the following counsel of record:

Josh Sanford, Esq.
Sean Short, Esq.
SANFORD LAW FIRM, PLLC
10800 Financial Centre Pkwy, Suite 510
Little Rock, AR 72211
josh@sanfordlawfirm.com
sean@sanfordlawfirm.com

*/s/ John A. Ybarra*
John A. Ybarra