**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY CABE, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 24 C 1316 |
| v. | ) ) | Judge John Robert Blakey |
| EVERGREEN PACKAGING LLC and PACTIV EVERGREEN INC., | ) ) ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

In this Fair Labor Standards Act case, Plaintiffs seeks leave to issue notice to potential opt-in plaintiffs pursuant to 29 U.S.C. § 216(b). *See* [19]. For the reasons explained more fully below, the Court denies Plaintiffs' motion. The parties shall meet and confer and file a joint status report by April 24, 2026, proposing additional case management dates, including a fact discovery deadline.

**<u>STATEMENT</u>**

**A.  Factual Background**

Defendant Evergreen Packaging LLC manufactures various beverage packaging, paper, and paperboard products, and Defendant Pactiv Evergreen Inc. manufactures and distributes various food services, food merchandising, and beverage merchandising products. [16] ¶¶ 31, 36. Both operate multiple manufacturing facilities throughout the United States, including in Illinois, Michigan, New York, North Carolina, Pennsylvania, South Carolina, and West Virginia; both have their corporate headquarters in Illinois, and Plaintiffs allege that both centralize all human resources and pay policies such that the policies remain the same across all facilities. *Id.* ¶¶ 32, 37. Defendants Evergreen and Pactiv jointly operate certain manufacturing facilities, making them a single enterprise within the meaning of the Fair Labor Standards Act ("FLSA"). *Id.* ¶¶ 39, 42.

The named Plaintiffs, Jeffrey Cabe, Sean Frey, Anita Poteete, Ronda Rohde, Robert Snell, Jeffrey Moore, Elisa Tinnell, Michael Kap,[1] Karen Robertson, Jim Westra, Johnny Ruis, Archie Robinson, Decoda Keys, and Norma Moody, all worked

---

[1] Defendants refer to this Plaintiff as Michael Kapolka.

as hourly production workers at one of the manufacturing facilities Defendants jointly operate. [16] ¶¶ 10–23, 39, 45–58, 59. For purposes of the FLSA, Plaintiffs were "hourly, non-exempt employees."

Plaintiffs allege that they recorded their hours worked via an electronic timekeeping system, which logged their hours into an electronic payroll system maintained by Defendants, *id.* ¶ 63. But, per Defendants' policies, rather than paying Plaintiffs for all time worked, the system rounded Plaintiffs' hours down in approximately 15-minute increments. *Id.* ¶ 64. For example, an employee who remained clocked in for 8 hours and 10 minutes, got paid for just 8 hours. *Id.* ¶ 65. As a result, employees remained uncompensated for all time worked, in violation of the FLSA. *Id.* ¶ 66. Additionally, that policy also wound up shortchanging employees on overtime compensation, which is paid on hours worked over forty each week. *Id.* ¶¶ 67–68.

Plaintiffs initiated this case on February 15, 2024, *see* [1], and amended their complaint on April 1, 2024, [16], asserting individual and collective claims for failing to pay overtime compensation as required under the FLSA. Plaintiffs now ask the Court to authorize "opt-in" notices to an FLSA collective defined as:

> All hourly-paid production workers who recorded at least 39 hours in any week within the last three years, except those who joined *Wallace v. Evergreen Packaging, LLC*, Case No. 4:22-cv-337-KGB (E.D. Ark.) or *Woodall v. Evergreen Packaging, LLC*, Case No. 1:23-cv-459 (N.D. Ill.).

[16] ¶ 92; [19] at 2.[2] The proposed collective remains expansive; based upon the record, it appears the proposed collective potentially includes hundreds of employees at each facility and thus numbers in the thousands.

Defendants oppose the motion, *see* [24].

## B.    Applicable Legal Standards

To "ensure broad and robust enforcement, the Fair Labor Standards Act of 1938 (FLSA) permits employees to bring so-called collective actions to sue employers for violations of the FLSA on behalf of themselves and other similarly situated employees. 29 U.S.C. § 216(b)." *Richards v. Eli Lilly & Co.,* 149 F.4th 901, 905 (7th Cir. 2025). Due to the "opt-in nature" of collective actions, "the benefits of collective actions can only be effectively realized if other similarly situated employees are made

---

[2] The listed cases challenge the same claims and seek the same relief, but they remain limited to production facilities located in Arkansas. [16] at 12 n.2. The opt-in periods for both cases have ended. [19] at 2 n.1.

aware of the pending action"; and, as a result, the FLSA empowers district courts to "issue notice of a pending collective action to 'potential plaintiffs' so that they may make 'informed decisions about whether to participate.'" *Id.* at 906 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70, 172–73 (1989)).

But plaintiffs "may only proceed as a collective if they establish, by a preponderance of the evidence, that they 'are, in fact, similarly situated,' at which point the district court will 'certify' the collective action." *Sims v. Am. Heritage Protective Servs., Inc.*, No. 24 CV 5620, 2025 WL 3240900, at *2 (N.D. Ill. Nov. 20, 2025) (quoting *Richards*, 149 F.4th at 912). Thus, to secure notice, "a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated" —that is, "a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Richards*, 149 F.4th at 913. A plaintiff's evidence of "similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence." *Id.*

Moreover, even if a plaintiff establishes the existence of a material dispute as to similarity, that by itself does not entitle him to notice. Instead, the question of whether to issue notice depends upon the nature of the factual dispute. As the *Richards* court noted, whether a plaintiff can demonstrate similarity before notice "turns largely on the nature of plaintiffs' allegations." *Id.* at 912. For example, if the "common thread connecting plaintiffs' claims is an employer's informal policy of requiring work off the clock, it may be impossible to prove which employees were subject to that policy until opt-in plaintiffs are identified"; in contrast, "it may be readily proven prior to notice that a challenged policy was limited in scope—for example, to only a particular type of worker or geographic location." *Id.* at 912–13.

## C.    Discussion & Analysis

Plaintiffs claim Defendants failed to pay them for all work performed; specifically, company policies paid employees, not from their clock-in times to their clock-out times but rather based upon rounding policies. In support of their motion for notice, eight of the named Plaintiffs, mostly worked different jobs across seven different facilities, submitted declarations:

- Jeffrey Cabe worked as an evaporator/tail oil operator in Defendants' Canton, North Carolina facility from July 2021 to September 2023, [19-6];

- Sean Frey worked as a paper-making machine operator in Defendants' Plattsburgh, New York facility from October 2021 through February

3

2023, [19-7], and Archie Robinson has worked as a mechanic at this facility since July of 2015 [19-12];

- Ronda Rohde worked as a press operator in Defendants' St. Charles, Illinois facility from January of 2022 to January of 2023, [19-8];

- Robert Snell worked as a forklift operator in Defendants' Canandaigua, New York facility from 1993 to December of 2022, [19-9];

- Elisa Tinnell worked as a machine operator (among other jobs) at Defendants' Jackson, South Carolina facility since August of 2021, [19-10];

- Jeffrey Moore worked as a production worker at Defendants' Mineral Wells, West Virginia facility from August of 2017 to August of 2021, [19-11]; and

- Karen Robertson has worked troubleshooting and maintaining injection molding machines at Defendants' Mt. Carmel, Pennsylvania facility since August of 2023, [19-13].

These Plaintiffs' declarations all state that, because of Defendants' time policies, they regularly worked 15 to 20 minutes longer than their scheduled shifts but were paid just for their scheduled shifts. *See* [19-6] through [19-13].

Defendants dispute several of Plaintiffs' assertions: they dispute that their rounding policy violates the law; they dispute that the alleged rounding practices remained universal across all facilities; and they dispute that the practices resulted in uncompensated work. *See* [24]. And they provide an abundance of evidence suggesting that facilities employ their own timekeeping practices and that, although employees at some facilities may be permitted to clock in early, in practice, employees who clock in during a grace period are not working; in fact, even at those facilities, off-the-clock work remains verboten. *See* [24-1] through [24-9].

For example, Defendants offered the declaration of Tina Devey, the Human Resources Manager at Pactiv's Canadaigua, New York facility, where Plaintiff Robert Snell worked. *See* [24-1]. Devey indicates that the Canadaigua facility developed and implemented its own timekeeping practices, which allow employees to clock or punch in up to 7 minutes early and pay employees "to the punch" but preclude any pre-shift work. *Id.* Kelly Rodgers, the Human Resources Manager at Pactiv's Frankfort, Illinois facility, where Plaintiff Anita Poteete works, describes a similar policy at that facility: a 7-minute grace period policy allows employees to punch-in no more than 7 minutes prior to the start of their scheduled shifts and punch out no more than 7 minutes after the end of their scheduled shift, though employees do not

4

perform work during these grace periods. [24-1]. Rodgers also indicates that, outside of those windows, employees are "paid to the punch."[3] *Id.* Megan Taylor, the Human Resources Manager at Pactiv's Mineral Wells facility, where Plaintiffs Jeffrey Moore and Decoda Keys worked, indicates that her facility similarly utilizes a 7-minute grace period, which would only allow employees to clock in up to 7 minutes early; she also indicates that, during this "grace period," employees do not perform work. [24-3]. She represents that facility policy precludes off-the-clock work and, in fact, employees are paid for all time worked. *Id.* Defendants submitted a similar declaration from Ian Anthony, the Human Resources Manager at Pactiv's Kinston, North Carolina facility, where Plaintiff Norma Moody worked, [24-2].

Additionally, Hury Gochez-Kerr, the Human Resources Manager at one of Defendants' affiliate's Hazelton, Pennsylvania facility, where Plaintiff Michael Kapolka worked, represents that that facility utilizes a 30-minute grace period at the start of a shift and a 7-minute grace period at the end of a shift, though punches outside the grace periods are "paid to the punch." [24-5] at 3. The Hazelton facility precludes off-the-clock work and employees do not perform work during the grace periods (nor are they expected or required to do so). *Id.*

Derrick Dyas, the Human Resources Manager at the Canton, North Carolina facility, where Plaintiff Jeffrey Cabe worked, indicates that that facility ran 24 hours a day, 7 days a week and operated on two 12-hour shifts; the facility utilized a 30-minute grace period at both ends of a shift, as well as a "shift-relief buddy" system, whereby the first shift worker stopped working once his or her shift buddy (the second shift worker) arrived. [24-6]. Like the other facilities, the Canton facility precluded off-the-clock work. *Id.* The declaration of Jennifer Pesch, Human Resources Manager at Pactiv's St. Charles, Illinois facility, where Plaintiff Ronda Rohde worked, confirms that her facility also uses a "shift-relief buddy system," though that facility uses a 7-minute grace period on both ends of the shift, [24-8].

Linda Levingston-Madrigal, the Human Resources Manager at Evergreen Packaging's Turlock, California facility, indicates that her facility does not use a grace period at all: employees are expected to clock in 10 minutes before the start of their scheduled shift, at which point they engage in a "pre-shift: meeting with supervisors, for which they are paid; at the end of a shift, employees are expected to timely clock out, and, if they clock out after their scheduled shift ends, they are "paid to the punch." [24-7].

All of this evidence undermines Plaintiffs' "similarly situated" assertions, not only that the proposed collective remained at all times subject to a uniform policy, but also that the proposed collective performed uncompensated work.

---

[3] In fact, Rodgers' declaration indicates that a review of Plaintiff Poteete's time and pay records shows that Poteete was overpaid, not shortchanged, because of the grace period policies, [24-1], which further undermines the notion that this Plaintiff could be representative of the proposed collective. *Id.*

5

In response to Defendants' evidence, Plaintiffs primarily suggest that, because notice has been approved in prior litigation involving the same claims and Defendants, it should be approved here as well. *See* [25]. They also argue that their proffer satisfies their "well-established lenient burden." *Id.* at 4.

To the extent such arguments ever sufficed, they no longer do so under *Richards,* which rejected the "lenient" standard upon which Plaintiffs rely. Now, "a plaintiff must produce some evidence suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy," and a court "considering whether a plaintiff meets this burden must allow the defendant to submit rebuttal evidence and take into account the 'extent to which plaintiffs engage with opposing evidence.'" *Brown v. Select One, Inc.*, No. 24 CV 903, 2025 WL 3687753, at *2 (N.D. Ill. Dec. 19, 2025) (quoting *Richards*, 149 F.4th at 913).[4]

In deciding whether a proposed collective is similarly situated, this Court considers the nature of the claims, as well as the nature of any potential defenses; after all, "the question is not simply whether the employees are similar in the abstract; rather, it is whether they are similar in ways so that it makes sense to decide their claims in the same lawsuit." *Dyer v. Skogen's Foodliner, Inc.,* No. 25-CV-322-JDP, 2026 WL 381878, at *4 (W.D. Wis. Feb. 11, 2026). In *Dyer*, the plaintiffs supported their notice motion with declarations from "15 current and former department managers who worked in 12 different positions at 16 different Festival stores, acted as a substitute department manager at 15 additional Festival stores, and observed other department managers while the declarant was working an hourly position at 2 additional stores"; the court determined that, although the plaintiffs did not submit declarations from employees in every store and in every position in the collective, "the experience of the employees who did submit declarations is broad enough to infer in the absence of contrary evidence that their experience is representative of the collective, at least for the purpose of approving notice." 2026 WL 381878, at *5–6. The opposite is true here: Plaintiffs' declarations, especially in the face of Defendants' evidence, suggest that Plaintiffs' experiences were atypical and thus fail to merit the expansive notice Plaintiffs propose. *See Sims v. Am. Heritage Protective Servs., Inc.*, No. 24 CV 5620, 2025 WL 3240900, at *4 (N.D. Ill. Nov. 20, 2025) ("There is no material factual dispute regarding similarity when there is unrebutted evidence of dissimilarity with respect to a policy or practice that is central to a plaintiff's claim.").

In short, on the current record, Plaintiffs have failed to demonstrate a material dispute as to similarity with respect to a particular policy or with respect to non-

---

[4] Because of the timing, neither side cited *Richards* in its briefs. After *Richards* was issued, Defendants filed a supplemental brief addressing the impact of the case, [30]; Plaintiffs did not respond.

compensated work during facility grace periods, and the Court thus denies their request for notice to their proposed collective. *See Richards*, 149 F.4th at 913 ("A plaintiff's evidence of similarity need not be definitive, but defendants must be permitted to submit rebuttal evidence and, in assessing whether a material dispute exists, courts must consider the extent to which plaintiffs engage with opposing evidence"); *Sims*, 2025 WL 3240900, at *5 (denying plaintiff's motion for notice because the record provided "no basis for concluding that the 'factual nexus' proposed by Sims actually exists among the members of the proposed collective.").

## D.    Conclusion

For these reasons, the Court denies without prejudice Plaintiffs' motion for notice [19].

Date: March 31, 2026                                  Entered:

John Robert Blakey
United States District Judge